# Keagy *et al. versus* The Commonwealth for use, &c.

*Purchaser of Chose in Action not negotiable takes it subject to Equities of Debtor.*

1. Every purchaser of a chose in action not negotiable takes it subject to all the equities which the debtor may then have, when not previously inquired of concerning his defences.

2. Where a purchaser of land had become responsible for a recognisance previously given by the vendor, and had afterwards, before assignment by the vendor to a third person in fact and of record, bought a judgment against the vendor, it was *Held,* that the judgment was an equitable set-off against the recognisance.

ERROR to the Common Pleas of *Bedford county.*

This was a *scire facias sur recognisance* in the Orphans' Court on the partition of the real estate of Abraham Keagy, deceased, in the name of the Commonwealth for the use of Christian Keagy, now for the use of O. E. Shannon, against Philip Keagy and Jacob Hipple, with notice to Thomas Johnston, terre-tenant, in which the following case was stated for the opinion of the court:—

· On the 20th February 1843, proceedings were had in partition on the estate of Abraham Keagy, deceased—appraisement held. On the 5th March 1844, land decreed to Philip Keagy, one of the heirs. Same day Philip Keagy, with Jacob Hipple as bail, gave recognisances to widow and heirs. The widow's recognisance was conditioned, among other things, to pay one of the heirs, Christian, the legal plaintiff, $286.15 at the widow's death. Philip Keagy afterwards sold the land to Thomas Johnston. About 15th August 1859, the widow died. To Nos. 44 and 45, February Term 1857, John S. Hetrick issued *fi. fa.* with *sci. fa.*

[Keagy *et al. v.* Commonwealth.]

against Johnston, the defendant, and attached the amounts of his judgments against Christian Keagy in the hands of said Johnston, and Johnston paid the same off at the widow's death. This left $59 due on the recognisance. On 8th June 1860, O. E. Shannon obtained an assignment of this balance, and on the 15th June 1860, it was filed of record. Jacob Brenneman had a judgment against said Christian Keagy, to No. 97, August Term 1857, in the Common Pleas, for $53.59, with interest from 5th September 1857. On the 3d February 1860, Brenneman assigned this judgment to Johnston, the defendant, who had it filed of record 16th November 1860.

The recognisance and judgment both being matters of record, the question is, which assignment shall take precedence, the one from Brenneman to Johnston, which was *made* first, or the one from Keagy to Shannon, which was *filed* first. If the assignment to Shannon first filed is good as against the other, then judgment to be entered for plaintiff for $59, with interest from 8th June 1860; if not, judgment to be entered for defendant.

On the 29th of November 1861, the court directed judgment to be entered for plaintiff for the sum of $59, with interest from 8th June 1860, which was assigned for error here by defendants.

*A. King,* for plaintiff in error, contended that he was entitled to judgment in the case under the authority of Ramsey's Appeal, 2 Watts 228, Fisher *v.* Knox, 1 Harris 622, and Rider *v.* Johnston, 8 Id. 190.

*Cessna* and *Spang,* for defendants in error.—The parties claim the same recognisance in effect; the one by an assignment of it, the other by an assignment against it. It is not a question of equitable set-off, but a question of negligence on the one side, or diligence on the other. If Johnston had a judgment against this recognisance, he should have put it upon the record. The judgment he now claims to have against the recognisance was Jacob Brenneman's judgment, so the record said when Shannon obtained this recognisance; when he issued his writ upon it, and for one month after. What notice could Shannon have of Johnston's assignment of this judgment, which he carried in his pocket until after Shannon obtained the recognisance? Johnston's previous conduct in paying off the Hetrick attachment still further misled Shannon, and would have led any one to suppose that when he had paid the full amount of the attachments out of the recognisance, and asserted no claim or set-off, that he was ready to pay the balance. The rule that the assignee of a chose in action takes it, subject to all the equities subsisting between the original parties, is no more familiar than exceptionable, when the party claiming its protection has failed to comply

with all its requisites, or when he does not occupy the ground of an original holder of the chose. Johnston was a terre-tenant; the land was bound for the money, and Johnston bought subject to this lien, with full notice. When Shannon came to collect the balance due on the judgment, he was bound to look no further than the record. He was not bound to suspect that Jacob Brenneman's judgment had anything to do with it. An equitable right of setting off judgments is permissive, and then only where it will infringe on no other right of equal grade : Ramsey's Appeal, 2 Watts 230.

This is a question essentially of *notice*. If Keagy, the original holder of the recognisance, had issued *before* Johnston filed his assignment, he would be entitled to costs. The case of Rider *v.* Johnston, 8 Harris 190, referred to by the plaintiff in error, is as confidently relied on by the defendant in error for sustaining the position that he cannot be affected by the set-off of Johnston without notice. The maxim *prior in tempore, potior in jure,* holds, it is true, wherever it has not been inverted by enactment, or where the benefit has not been lost by misconduct and imprudence ; but it must not be allowed to protect a party who has neglected a requisite precaution to save others from imposition. Fisher *v.* Knox, 1 Harris 626, conclusively settles this case. See also Mott *v.* Clark, 9 Barr 399 ; Phillips *v.* Bank of Lewistown, 6 Harris 402.

The plaintiff in error had his assignment on the 13th February and 23d March 1860, when he paid off the Hetrick attachments to Shannon, who was then acting as attorney for Hetrick. Why did he not file it if he had it, or let Shannon know that he had such an assignment? Shannon would not then in the following June have purchased the recognisance. But here was a recognisance standing open upon record ; the widow had died, and it was to be paid. Johnston had paid part, and the remainder, $59, stood due and unpaid. Johnston never even asserted or entered of record any set-off. Shannon concluded, as he had a right to do, that the balance was unpaid, obtained an assignment, issued his writ, and not until a month after all this was done did the plaintiff or any one else, except Brenneman and Johnston perhaps, hear that the Brenneman judgment had anything to do with the case.

The opinion of the court was delivered, May 29th 1862, by

LOWRIE, C. J.—Johnston became responsible for the recognisance in favour of Christian Keagy by buying the land on which it was charged, and afterwards he bought a judgment of Brenneman against Keagy, and thus obtained a right of set-off to the amount of it : afterwards, and without notice of this purchase, Shannon obtained an assignment of the recognisance and sued on it. Can Johnston set off against the recognisance the judgment against Keagy thus purchased before the recognisance was

[Keagy *et al. v.* Commonwealth.]

assigned in fact and of record? Why not? Every purchaser of a chose in action takes it subject to all the equities which the debtor may then have, when not previously inquired of concerning his defences: and surely this purchased judgment gave him an equitable right of set-off. So say all the cases, and none of them referred to conflict with this principle. The value of recording the assignment of the judgment by Brenneman to Johnston was only to prevent it from being again sold to some one else: it does not at all affect this case; and so with the assignment of the recognisance. The purchase of it without recording the assignment, made Shannon's title to it complete, subject to any equitable set-off then held by Johnston. The case of Rider *v.* Johnston, 8 Harris 190, goes even further than this, and would allow Johnston to set off any claims purchased against his creditor, even after the assignment of his debt, if he had no notice of the assignment. I thought at the same time this was going too far, but perhaps not.

Judgment reversed, and judgment for the defendant on the case stated, with costs, and record remitted.