Joseph Fellows et al., Appellants, *v.* Loomis et al.

[Marked to be reported.]

*Trusts and trustees— Attorney at law — Fraud—Ejectment — Equitable
ejectment.*

The relations between attorney and client are confidential and fiduciary,
and an attorney who procures from his client a transfer to himself of prop-
erty which the client held in trust, cannot escape the obligations which
rest on his client in relation to said property.

Where a mortgagor owned real estate, subject to an easement, and
entered into an agreement with the mortgagee to foreclose it and make
sale of the property, for the purpose of effecting a transfer of title in the
premises to a third party, in order to revest the mortgagee with a portion
of the land, free from the easement, the attorney of the mortgagee who had
charge of the whole transaction for both parties, with full knowledge of
its details and its purpose, and who took an assignment of the mortgage
to himself the day before the sale, and bought in the property at the sale
for a nominal sum, is bound to the mortgagor by the same trust relation
which existed between the mortgagor and the mortgagee, and as the mort-
gagee under his agreement would have been compelled to reconvey the
land to the mortgagor when repaid the amount of the mortgage and all
costs and expenses to which he had been subjected, the attorney is bound
to do the same.

An action of ejectment to enforce such a trust is an equitable action, and
whether the attorney took as an innocent purchaser without notice was,
under the facts as stated, a question of law for the court, and not a question
of fact to be submitted to the jury.   The court should have directed the
jury to find a verdict conditioned for the payment of the debt and interest
of the judgment assigned to the attorney, together with all lawful expenses
incurred by the attorney in and about the management and care of the
trust estate.

A verdict finding that the defendant is a purchaser without notice, when
the law imputes notice on the uncontested facts before the jury, is entitled
to no weight.

Argued Feb. 26, 1895.    Appeal, No. 79, Jan. T., 1895, by plaintiffs, from judgment of C. P. Lackawanna Co., Oct. T., 1894, No. 358, on verdict for defendants.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, and MITCHELL, JJ.    Reversed.

Ejectment for sixty-two acres of land in the city of Scranton. The facts appear by the opinion of the Supreme Court.

The court charged the jury in part as follows:

" In answer to your first question, gentlemen of the jury, ' If we consider a trust to have been formed between Brown and Fellows, did the selling of the mortgage by Brown to Loomis make the trust between Brown and Fellows null and void?' I would say, that the selling of the mortgage by Brown to Loomis did not make the trust between Brown and Fellows void, if you find that there was a trust.    But before you can charge Loomis with the trust between Brown and Fellows, you must find that he had knowledge of it, that he was a party to it, and was carrying it out under the instructions of either one or the other, Brown or Fellows.    The selling of the mortgage by Brown to Loomis would not make any difference in either consideration, because if the trust existing between those two men, provided it did exist, was not communicated to Loomis, and he was not a party to it, then he is not chargeable with it." [66]

The plaintiffs' points were among others as follows:

" 17. The uncontradicted evidence shows that a sheriff's sale of the property in question was made by F. E. Loomis as attorney in the sale, subject to the right of the Delaware, Lackawanna and Western Railroad Company to appropriate the whole of the property to their own use.    That the judgment on which the sale was made was confessed by Joseph Fellows to Sylvanus Brown for the purpose of transferring the title to the property, in trust, to Brown for a special purpose.    That F. E. Loomis, as attorney in the sale, had imputed knowledge of the purpose of the sale.    That the sale of the property, subject to the company's right of appropriation, enabled Mr. Loomis to purchase the property for a nominal sum.    That after so purchasing the property for a nominal sum his attempt and design to hold the property as his own is such a fraud as vitiates

the sale, and he acquired no title thereby. *Answer:* Refused. [53]

"18. That the uncontradicted evidence shows that F. E. Loomis was the attorney in the sale, that he drew all the papers and exercised exclusive control over the proceedings, that he purchased the property at the sale for the costs; and the purchase of the property at his own sale for the costs, under the conditions of sale and the circumstances of the case, is such a fraud as vitiates the sale, and he acquired not the title thereby. *Answer:* Refused." [54]

"21. The testimony of Joseph Fellows and F. E. Loomis shows that Fellows employed Mr. Loomis as attorney to draw a mortgage on the property in question, and for this purpose he submitted to him for inspection his title deeds of the property. This is sufficient to establish between Mr. Loomis and Mr. Fellows the relation of attorney and client, from which the law implies a trust which would forever preclude Mr. Loomis from setting up against Fellows an adverse title to the property, and the verdict must be for the plaintiffs, and against the defendants, for the land described in the writ. *Answer:* Refused. [57]

"23. That the evidence of both F. E. Loomis and Fellows shows that in November, 1884, the relation of attorney and client existed between them in regard to the property in dispute. That the confidence which arises from such relation continued, and therefore F. E. Loomis purchased the property in dispute at his peril and he cannot claim the protection which is extended to an innocent purchaser. That F. E. Loomis acted as attorney in the execution of the trust, and purchased the trust property at a sale brought about and controlled by him as such attorney, and therefore he cannot claim the protection which is extended to an innocent purchaser. *Answer:* Refused." [58]

*Errors assigned*, among others, were (53, 54, 57, 58, 66) above instructions, quoting them.

*C. Smith*, for appellants.—Whenever chancery would execute a trust or decree a conveyance, the courts in Pennsylvania will direct a recovery in ejectment: Dougan v. Blocher, 24 Pa. 28;

Reife v. Geyer, 59 Pa. 393; Todd v. Campbell, 32 Pa. 252; Moore v. Small, 19 Pa. 461.

· The testimony of Brown, the trustee, is a sworn confession of the trust—and alone sufficient to warrant a chancellor in decreeing the existence of the trust: Story's Eq. 590; Cozine v. Graham, 2 Page, 181; Woods v. Dille, 11 Ohio, 457; Dean v. Dean, 1 Stock. Ch. 425.

From the facts it is claimed that certain conclusions follow that are so necessary and natural that, should a jury find against them, such finding would be so unnatural and absurd that a court would set the finding aside: Myers v. R. R., 150 Pa. 390; Campbell v. Ins. Co., 2 Whart. 53; Fox v. Mackneth, 1 L. Cas. in Eq. 209; Cram v. Mitchell, 1 Sand. Ch. 251.

An attorney who advises, aids or operates in the sale of trust property cannot purchase the property denuded of the trust: Campbell v. Ins. Co., 2 Whart. 53; Leisenring v. Black, 5 Watts, 304; Henry v. Raiman, 25 Pa. 354; Barrett v. Bamber, 81 Pa. 247; Wormley v. Wormley, 8 Wheat. 442; Davoue v. Fanning, 2 Johns. Ch. 252; Beeson v. Beeson, 9 Pa. 284; Michoud v. Girod, 4 How. 560; Hamlin v. Davis, 108 Ill. 399; Chorpenning App., 32 Pa. 316; Spencer's App., 80 Pa. 332; Diller v. Brubaker, 52 Pa. 505; Edwards v. Dooley, 120 N. Y. 552; Hill v. Frazier, 22 Pa. 320.

If Mr. Loomis, as attorney for Brown, the trustee, could add to or change the purpose of the sale, then it was his duty to give notice at the sale that the sale would result in the release of the company's right of appropriation: Peebles v. Reading, 8 S. & R. 492; Kisler v. Kisler, 2 Watts, 324; Herman on Ex. 417; Surget v. Byers, 1 Hemp. 715.

A trustee or other fiduciary can enter into no transaction affecting the subject-matter of the trust, whereby he may be personally benefited: Robbins v. Butler, 24 Ill. 432; Herrick v. Miller, 123 Ind. 304; Denholm v. Mckay, 148 Mass. 434; Heager's Ex. App., 15 S. & R. 65; Johnson v. Gray, 16 S. & R. 361; Hyndman v. Hyndman, 19 Vt. 9; Benham v. Rowe, 2 Cal. 387; Slee v. Manhattan Co., 1 Paige, 48; Hoyt v. Martense, 16 N. Y. 231; Pettibone v. Perkins, 6 Wis. 616; Dobson v. Racey, 3 Sand. Ch. 60; Fox v. Mackrith, 4 Bro. P. C. 258; Cowee v. Cornell, 75 N. Y. 91; Greenfield's Est., 14 Pa 505; Aultman's App., 98 Pa. 517.

A trustee or other fiduciary purchasing the trust property is liable to have the purchase set aside if within a reasonable time the cestui que trust chooses to say he is dissatisfied: Campbell v. Walker, 5 Ves. 678; Davoue v. Fanning, 2 Johns. Ch. 252; Cadwalader's App., 64 Pa. 293; Horn v. Pattison, 1 Grant, 304; Boynton v. Housler, 73 Pa. 458; McCulloch v. Cowher, 5 W. & S. 427; Rankin v. Porter, 7 Watts, 387; Duff v. Wilson, 72 Pa. 442; Dickey's App., 73 Pa. 218.

A trustee who holds the legal title for the use of another will not be permitted to deal with the property for his own benefit, and it makes no difference in his favor that he acquires it at a judicial sale under a superior title: Roberts v. Masley, 64 Mo. 207; Beegle v. Wentz, 55 Pa. 374; Campbell v. Penn Ins. Co., 2 Whart. 53; Fisk v. Sarber, 6 W. S. 18; Prevost v. Gratz, Peters C. C. 364; Frank's App., 59 Pa. 190; Parshall's App., 65 Pa. 224; Mullen v. Doyle, 147 Pa. 512.

*H. M. Hannah* and *H. W. Palmer, S. B. Price* with them, for appellees.—The assignee of a judgment or mortgage takes it subject to the set-off or defalcation rights of the maker, but not subject to secret equities inconsistent with the legal import of the instrument: Davis v. Barr, 9 S. & R. 141; Taylor v. Gitt, 10 Pa. 431; McConnell v. Wenrich, 16 Pa. 365; Mifflin Co. Nat. Bank's App., 98 Pa. 150.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895:

This case was before us in 1893 and may be found reported in Fellows v. Loomis, 156 Pa. 74. The complaint then was that the learned trial judge had withdrawn the case from the jury and directed a verdict in favor of the defendants.

The evidence showed that Joseph Fellows was the owner of a tract of land in the city of Scranton underlaid with coal. The coal had been sold to the Delaware, Lackawanna and Western Railroad Company by a previous owner, together with the privilege of using the surface for piling the culm and other refuse brought to the surface in the process of mining the underlying coal. Only a part of the tract had been used for the deposit of culm but the servitude to which it was subject, and the uncertainty as to when and where it would be insisted on by the owners of the mineral estate rendered the unused part of

the surface of little value.   To relieve a part of the tract from this servitude and render it salable for building purposes Fellows entered into negotiations with the railroad company, and after some delay arranged to convey a portion of the tract to the company in fee simple, in consideration of a release of its rights in the remainder of the tract.   The result of such an arrangement would be to place Fellows in a position to make a good title to the surface of land the value of which was estimated by some of the witnesses at fifty thousand dollars or more, while the whole tract subject to the servitude was of comparatively little value.   His first plan was to convey by himself and wife to the company ; and to have the lien of the only incumbrance, which was a mortgage held by Brown for about twenty-eight hundred dollars, formally released from the part so conveyed.   Brown seems to have been ready and willing to coöperate with Fellows in making the title to the company, but Mrs. Fellows, who was living apart from her husband, refused to join in the deed.   It became necessary to resort to some other method for making the title to the company ; and that finally settled upon was, to make use of the mortgage of Mr. Brown to bring about a judicial sale of the land, and so divest Mrs. Fellows' right of dower.

For this purpose Brown was to bring the land to sale on his mortgage, bid it off, and carry out the arrangement negotiated by Fellows with the railroad company, and reconvey to Fellows the part of the tract thus relieved from the servitude subject only to the payment of the balance due him upon his mortgage.   All parties interested were benefited by the proposed arrangement.   The railroad company obtained the fee simple to so much of the tract as it really needed.   Fellows secured an unincumbered title to the balance, subject only to the mortgage debt he already owed, while both Brown's security and Mrs. Fellows' dower interest were largely increased in value by the transaction.   The court below held, however, that as Mrs. Fellows did not assent to the arrangement it was a fraud upon her, notwithstanding her prospective estate in dower was increased in value more than tenfold ; and that one who had taken title to the land at sheriff's sale under this arrangement could, because of this alleged fraud, hold it absolutely against Fellows and, as a necessary result, defeat both his title and his wife's dower interest therein.

We reversed the judgment rendered by the court below and sent the case back for a new trial saying, plainly, that the alleged arrangement was not such a fraud upon the wife as could affect the right of Fellows to proceed against an unfaithful trustee; but that it created a relation of trust and confidence between Fellows and Brown which the law would enforce against Brown and any one holding under him who was in any manner affected with notice.

A second trial has now been had and has resulted in a verdict in favor of the defendants. The appellants complain that this is due to an erroneous instruction by the learned judge of the court below on the subject of notice, and on the legal effect of the position of Loomis towards the parties and the transaction. It is important to see therefore just how the case stood upon the evidence when the instructions complained of were given. 1st. The general arrangement between Fellows and the railroad company, and the refusal of Mrs. Fellows to join in the deed were established. 2d. The agreement between Fellows and Brown to overcome the difficulty arising from Mrs. Fellows' conduct, by the use of Brown's mortgage as an instrument, for divesting the right of dower of Mrs. Fellows was not denied. 3d. The execution of a note for accrued interest on the mortgage, the entry of judgment upon it, the issuing of a writ of fi. fa. on the judgment, the levy and sale of the tract of land by virtue of the writ, were shown to be the successive steps taken to carry out the agreement between Brown and Fellows. 4th. Loomis, the defendant, was an attorney at law in practice in Scranton. Both parties came to him to have him draw the note, enter the judgment, issue the writ, and bring the property of Fellows to sale by the sheriff. He knew for what the note was given. He had the mortgage of Brown, and the title papers of Fellows in his possession at the time, and knew in a general way of the purpose the parties had in view in resorting to legal proceedings. 5th. Loomis caused judgment to be entered on the note on the eighth day of March, 1886, issued the writ thereon, caused a levy to be made on the tract of land, and brought it to sale subject to the servitude in favor of the owners of the coal on the tenth day of April, 1886. On the day before the sale Loomis obtained an assignment of the judgment from Brown, and at the sale became purchaser for a price

simply sufficient to cover the actual costs of the proceeding. After the sale he carried out the arrangement made by Fellows with the railroad company conveying to it the land which it had been agreed should be conveyed in fee, and taking to himself the release from the company of its claim upon the remainder of the tract. 6th. But when Fellows called on Loomis for a reconveyance subject to the payment of the Brown mortgage he flatly refused, and denied all right or interest of Fellows in the land or its proceeds. Now it is clear, too clear for serious contention, that if Brown had become the purchaser he could not afterwards hold the land and repudiate the general arrangement under which he acquired the title. The court below so held on both the first and second trials, telling the jury that the arrangement between Brown and Fellows for the use of Brown's mortgage created, as between themselves, such a relation of trust and confidence as obliged Brown to the exercise of fair play and entire honesty in its execution. The only open question was, therefore, Whether Loomis, upon the established facts just enumerated, stood on any better or higher ground than Brown, his assignor? In considering this question it is important to remember: *a*, that Loomis was the attorney of Brown who is conceded to have occupied a relation of trust and confidence towards Joseph Fellows; *b*, that as such attorney he held in his possession Fellows' deed for the land, Brown's mortgage upon it and the accompanying bond, and that after advising Brown that he could not proceed to sell the land on the mortgage because it was not due, drew the note, as he testifies, to obviate that difficulty and enable the parties to make a judicial sale of the land in the speediest manner practicable; *c*, that as such attorney he directed the proceedings down to the night before the sale, when he took an assignment of Brown's claim and became the owner of the mortgage and the judgment. Upon these facts we are of opinion that he should be held to have constructive notice of all that inquiry of his client or the defendant would have enabled him to learn in regard to the object of the legal proceedings and the duty of his client towards the defendant in the judgment.

This would have been the rule if the professional relation had not existed: Wheeler v. Hughes, 1 Dall. 23; Keagy v. The Commonwealth, 43 Pa. 70; Horstman v. Gerker, 49 Pa.

282; Earnest v. Hoskins, 100 Pa. 551.   A multo fortiori ought
this to be so where the assignee is the attorney of the assignor
in the preparation and enforcement of the instrument assigned.
The relations between attorney and client are confidential and
fiduciary, and the attorney cannot by a transfer to himself
escape the obligations that rest on his client: Thompson v.
Christie, 138 Pa. 230.   He succeeds to his client's rights and
to his responsibilities as well, when he takes an assignment from
him.   But leaving wholly out of view his professional relation
to the parties and the proceedings in aid of which the judgment
was confessed, he was cognizant of facts from which notice may
be fairly implied.   He knew of the servitude on the land.   It
is fair to say from his own testimony, and from his conduct,
that he had knowledge of the arrangement between Fellows
and the railroad company for the release of the larger part of
the land from the servitude.   He showed great anxiety to
secure a sheriff's deed for the land, and had exacted, as the
plaintiff offered to prove, the sum of three hundred dollars
from his client for declining to carry out a previous promise to
assign the judgment and mortgage to him.   After the sheriff's
sale he at once carried out the arrangement Fellows had made
with the railroad company by conveying to it the part of the
tract it was to receive in consideration of its release of the
remainder.   This was done, as Mr. Stores who represented
the company testifies, upon the basis of the agreement made
with Fellows and exactly in accordance therewith.   From all
these circumstances it is fair to infer that he knew that to
which they so clearly pointed, that the note for interest already
secured by the mortgage, the judgment entered thereon, the
writ, the levy and the sale subject to the servitude, were in-
struments for divesting the dower of Mrs. Fellows and enabling
her husband to carry out his arrangement with the railroad
company for the division of the tract, and for securing to him-
self a marketable title to the larger portion of it.

If we treat Loomis simply as a purchaser of Brown's judg-
ment and mortgage, and leave wholly out of view his profes-
sional relation to his vendor and to the proceedings leading up
to the sheriff's sale; he ought, in the light of the circumstances
just referred to, to be treated as a purchaser with notice of the
trust existing between Brown and Fellows, and as taking title

subject to it; Smith v. Gibson et al., 1 Y. 291; Br. Eq. par., 115, 116; Dean v. Connelly, 6 Pa. 239; Jaques v. Weeks, 7 Watts, 261. He was bound to inquire. If he did not do so he has constructive notice of all that inquiry would have brought to his knowledge. Inquiry would have brought full information of the consideration and object of the judgment, and the arrangement under which it was confessed. He bought therefore with notice of the consideration and object of the judgment and of the arrangement under which it was confessed. He took title at the sheriff's sale, as his vendor would have done, for the benefit of Fellows, the owner of the land, in accordance with the agreement in pursuance of which the judgment was obtained and the sale made. The subsequent attempt to repudiate the trust and claim for himself all the benefit to be derived from the arrangement with the railroad company was a fraud upon Fellows which a court of equity cannot tolerate. He can no more be permitted to sweep the estate of Fellows into his own hands by means of the sheriff's sale on the judgment in favor of Brown, than Brown could have been; and that Brown could not have been allowed to hold the tract discharged from the trust if he had become the purchaser has been held on both trials in the court below, and with abundant reason. The assignments of error appearing on this record are sixty-seven in number. It is not necessary nor is it desirable to consider them separately. This appeal is controlled by the considerations to which we have now adverted. The case presented, when here before, the question whether the arrangement out of which the trust grew was such a fraud on Mrs. Fellows as closed the doors of a court of equity against Fellows when the trustee repudiated his trust and sought to appropriate the trust estate to his own use. The question now presented is whether the trustee may assign to his own attorney in actual charge of the proceedings entered upon under the trust arrangement, and make him an innocent purchaser, without notice, of the entire trust estate. This question was submitted by the learned judge to the jury. We think upon the facts presented it was a question of law for the court, and that the jury should have been directed to find upon this question in favor of the plaintiffs in accordance with the terms of the trust. This would have required a conditional verdict which would have saved the land to the owner, the mortgage

and interest and all necessary costs and expenses incurred, to the holder. The result so reached would have inflicted loss on no one, but would have done exact justice to all. The result that was reached in the court below strips the beneficiary of his property to enrich a faithless trustee or his assignee, and that assignee, the attorney under whose direction every step in execution of the trust has been taken.

This action is an equitable one. The judge sits as a chancellor. The question presented to him is, Shall the trust arrangement entered into by Brown and carried out to the letter down to the last thing provided for, viz, the reconveyance to Fellows of the part of the tract made marketable by the release of the railroad company, be specifically executed as to this, the sole object of the trust? It does not now matter that Fellows did not fully understand his rights, or that he may have supposed that he had been successfully robbed by what had been arranged between himself and his friend to enable him to realize a large sum out of his otherwise unsalable land. He comes within a time, and with a case, which entitle him to be heard. He has done and said idle and useless things, but nothing has been shown that ought to estop him in a court of equity from alleging the truth or from asking a chancellor to decree a conveyance of that which belonged to him before the trust arrangement was made and which under that arrangement belongs to him still. This case must be reversed and go to a jury to settle the terms of the conditional verdict which must be rendered in lieu of a formal decree of specific execution. Whatever expenses have been incurred by Loomis, the trustee, in addition to the debt due him as the assignee of Brown, that a trustee acting for the best interests of his cestui que trust might lawfully incur, should be allowed him. These might include the laying out of the land into lots, expenses actually incurred in the sale of lots, the care of the land, the payment of taxes, and municipal charges and all other legitimate expenses. Subject to the amount due upon the mortgage debt and for expenses of its management and care, the plaintiffs are entitled to recover against Loomis as they would have been entitled to recover against Brown. The attorney of a trustee who without inquiry becomes his vendee or assignee, stands on no higher ground than his client the trustee. He takes and holds under such cir

cumstances subject to the equities subsisting between his assignor and the cestui que trust.

A verdict is not conclusive upon a chancellor. Its office is to inform his conscience, not to control it. A verdict finding that the defendant is a purchaser without notice when the law imputes notice on the uncontested facts before the jury is entitled to no weight. The court below should have set aside the verdict and directed a new trial for the purpose of settling the amount due to the trustee. When this is done by another jury the trust will be executed and even handed justice done to every party interested. The trustee will receive his investment, expenses and interest. The cestui que trust will receive his land and its proceeds. Mrs. Fellows, if her position toward the property has not been changed by death or divorce, will have a much more valuable dower interest than before her refusal to join her husband in a deed made the trust arrangement with Brown necessary.

For the reasons now given the judgment is reversed and a venire facias de novo awarded in order that a verdict may be rendered recognizing and executing the trust in accordance with the principles enunciated in this opinion.